UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JASON SETH PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-02437-JPH-MJD |
| | ) | |
| FRANK LITTLEJOHN, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
SUMMARY JUDGMENT**

Plaintiff Jason Perry, an inmate at Wabash Valley Correctional Facility ("WVCF"), brings this action pursuant to 42 U.S.C. § 1983. Mr. Perry alleges that defendants Frank Littlejohn, Richard Brown, Teresa Littlejohn, Linda VanNatta, and Sonya Phipps retaliated against him by transferring him to New Castle Correctional Facility ("NCCF") after he filed a grievance in December of 2017.[1] The defendants move for summary judgment on Mr. Perry's claims. For the following reasons, the motion for summary judgment is **granted in part and denied in part.**

**I. Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A).

---

[1] Mr. Perry has since returned to WVCF.

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## II. Statement of Facts

Mr. Perry requested protective custody on December 1, 2017, while he was at WVCF. Dkt. 122, ¶ 2. He was placed in segregation pending the investigation of his request. *Id.,* ¶ 2. Mr. Perry filed an informal grievance on December 13, 2017,[2] to Deputy Warden Frank Littlejohn about his requests for protective custody. *Id.,* ¶ 4. Mr. Perry's informal grievance stated:

> I am on A/S requesting P/C again for the 9th time suffering because every time I'm forced to population due to you denying all my requests putting me in harms way.

---

[2] Mr. Perry states that this was his second informal grievance because Deputy Warden Littlejohn did not respond to his first one. Dkt. 122, ¶ 4.

> I've been threatened by more than 10 people and attacked 3 times at this prison. I
> got separatees here, but you keep denying me protective custody. This is a violation.

Dkt. 120, p. 3. Deputy Warden Littlejohn responded:

> I will once again be denying your PC request. You withdrew your statement against
> the officer, and it was learned that you lied about her. Also, you have no sep's here.
> However, I am recommending a facility transfer this time.

*Id.* There was no protective custody unit at WVCF when Mr. Perry requested protective custody

in late 2017. Dkt. 113-1, p. 31. Mr. Perry filed a formal grievance of the denial of protective

custody on December 17, 2017. Dkt. 120, p. 4. Mr. Perry stated:

> To start this grievance, I will begin by saying that I have no idea what Mr. Littlejohn
> is talking about. I requested PC because I was threatened by 3 inmates that the
> camera will show look suspicious and officer that was working M house late shift
> that night noticed suspicious activity. I was told to send money or I will be attacked
> and everyone at this camp will know I'm a snitch and can't be trusted. I did not
> request PC from Officer Parr who [I] filed a PREA on. That was a totally different
> situation that I handled by sexual abuse report. I requested PC because I was
> threatened by 3 inmates which the PC request shows.

Dkt. 120, p. 4. Teresa Littlejohn sent that grievance to Warden Brown for review and response.

Dkt. 113-4, p. 1. Warden Brown stated, "Mr. Littlejohn has appropriately addressed you on your

requests for protection. He also advised you that he is recommending a facility transfer and one

has been submitted as he told you it would be. No further action is necessary." *Id.*; dkt. 120, p. 8.[3]

A transfer classification hearing was held on or around December 18, 2017, and the

committee recommended transfer to the New Castle Annex-Treatment Unit/STAND Unit. Dkt.

---

[3] Mr. Perry states that Warden Brown answered his grievance under penalties for perjury, *see* dkt.
120, p. 8, but that Warden Brown answered his interrogatory about the grievance by stating that
he did not answer or investigate the grievance and that the grievance was answered by his designee,
dkt. 120, p. 24. Warden Brown explains that he meant that he did not answer or investigate Mr.
Perry's grievance *appeal*. *See* dkt. 124. He does not make such an assertion regarding
Mr. Perry's formal grievance. Since Mr. Perry has presented evidence that Warden Brown
answered this formal grievance and Warden Brown does not argue that he did not answer this
grievance, the Court finds this fact undisputed for purposes of summary judgment.

113-8, p. 1; dkt. 128. ¶ 1.[4] According to the policy in place at the time, an inmate considered for placement in the STAND Unit must meet the following criteria:

    a. Approval for Security Levels 2 and above

    b. Upon an offender's release from any disciplinary restrictive status housing unit;

    c. Upon an offender's release from any administrative restrictive status housing unit;

    d. Administrative placement or documented history of behavior that causes staff to believe that the offender's continued presence in the offender general population would be detrimental to the security of the facility or the offender;

    e. Prior administrative placement, disciplinary restrictive status housing placement, or administrative restrictive status housing placement,

Dkt. 130-1, p. 1. The STAND Unit differs from general population in that, among other things, inmates in the STAND Unit are not allowed contact visits, but only video conference or teleconference visits, dkt. 128-1, p. 8, are not allowed to eat in the dining hall, but instead eat in their cells, *id.,* p. 9, and are limited in programming, recreation, and phone calls, *id.,* p. 8 (limiting phone calls to 20 minutes); *id.,* p. 10 (providing limitations on recreation); *id.,* p. 11 (describing limited programming).

The report of inter-institutional transfer, signed by Warden Brown, indicated that the reason for recommending Mr. Perry's transfer was "poor adjustment." On the form, the following rationales supporting that reason were circled: "additional observation needed," "overall negative adjustment," "departmental needs," and "failure to adjust." Dkt. 120, p. 14.  In a memorandum dated January 3, 2018, the supervisor of classification notified Mr. Perry of the inter-facility transfer to NCCF and of his right to appeal. *Id.*, p. 13.

---

[4] Mr. Perry asserts that this hearing was not held within 72 hours of his admission to protective custody as required by Policy 01-04-101 "Adult Offender Classification." Dkt. 122, ¶ 3.

Mr. Perry appealed the classification decision on December 18, 2017. Dkt. 120, p. 11. In the reasons for the appeal, he stated:

> I am not eligible for a program like S.T.A.N.D. as I only have 2 class B's in a year[']s time. I just went through a program at New Castle for behavior and evaluation for 6 months. I caught the only two class B's Wabash Valley is using to recommend me for the S.T.A.N.D. program but it was not serious I have only gotten only one class C here at Wabash Valley in 5 months.[5] This place has denied my 9 different requests for protection….What I need is PC, and not a S.T.A.N.D. program.

Dkt. 120, p. 11.

Sonya Phipps denied the appeal. In a letter dated January 16, 2018, Ms. Phipps stated that Mr. Perry's placement in the STAND Unit was an intra-facility issue and that the Warden of NCCF is the final reviewing authority for such matters. Dkt. 113-9, p. 1; *see also* dkt. 113-6, p. 1. Mr. Perry filed a second appeal to Ms. Phipps on January 25, 2018, stating that he "requested protective custody at Wabash Valley and never signed a waiver to be put in population anywhere." Dkt. 113-9, p. 2. IDOC Policy and Administrative Procedure 01-04-101 provides that "The Superintendent is the final administrative review for intra-facility classification transfer decisions." Dkt. 120 p. 57.

On February 8, 2018, while he was housed at NCCF, Mr. Perry appealed the formal grievance denial. Dkt. 113-7, p. 6. Mr. Perry's appeal stated:

> I requested PC because I was threatened by 3 inmates that the camera will show looks suspicious and officer that was working M house left side that night noticed suspicious activity. I was told to send money or I will be attacked and everyone at this camp will know I'm a snitch and can't be trusted. I did not request PC from Officer Parr.

> Frank Littlejohn has denied about 10 requests for PC and putting me in harms way because of this. I was attacked 3 different times at Wabash Valley which the pictures and reports will prove. I have been threatened by more than 10 people and just moved form cellhouse to cellhouse for the pain and suffering to reoccur.

---

[5] While at WVCF from August 22, 2017 through January 10, 2018, Mr. Perry had only one conduct report for going to commissary when it was not his designated time. *See* dkt. 128-1, p. 29.

*Id.*

Warden Brown's designee, the litigation liaison, responded to the February 8, 2018, grievance appeal, stating that Deputy Warden Littlejohn's "actions were appropriate" and that Mr. Perry had not "provided any additional information that would indicate the answer to [his] formal grievance should be changed." Dkt. 113-7, p. 2. Mr. Perry disagreed with the facility appeal response and requested an appeal to the Department Offender Grievance Manager. *Id.*

Linda VanNatta, an administrative assistant based out of the central office of the Indiana Department of Correction ("IDOC"), dkt. 113-5, p. 1, dkt. 113-1, p. 37, reviewed the appeal and agreed with the facility response. Dkt. 113-7, p. 1.

### III. Discussion

Mr. Perry alleges that the defendants retaliated against him by transferring him to NCCF. To prevail on his First Amendment retaliation claim, Mr. Perry must show that "(1) []he engaged in activity protected by the First Amendment; (2) []he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity []he engaged in was at least a motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (internal citations omitted). The defendants do not dispute that Mr. Perry engaged in protected First Amendment activity, but contend that he cannot satisfy the second and third elements of his retaliation claims.

### A. Deprivation Likely to Deter First Amendment Activity

"The standard for determining whether an action is sufficiently adverse to constitute retaliation is well established: it must be 'likely [to] deter a person of ordinary firmness from continuing to engage in protected activity.'" *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020) (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)).

The defendants argue that Mr. Perry did not suffer a deprivation likely to deter First Amendment activity. It is undisputed, however, that Mr. Perry was transferred to the STAND Unit at NCCF, and that conditions for inmates in the STAND Unit are more restrictive than conditions for inmates in general population.  Dkt. 130, p. 2.  Inmates in the STAND Unit are not allowed contact visits, must eat in their cells rather than the dining hall, and are limited in group activities, recreation, and phone calls. Dkt. 128-1, p. 8-11. While this evidence appears to conflict with Mr. Perry's testimony at his deposition that he was in population at NCCF, the defendants do not dispute that Mr. Perry was transferred to the STAND Unit or that conditions in the STAND Unit are more restrictive.  Defendants argue that Mr. Perry's deposition testimony supports the inference that the STAND Unit was not that different from general population, but the Court must consider the evidence in the light most favorable to Mr. Perry and draw all reasonable inferences in his favor. *See Skiba*, 884 F.3d at 717. Applying this standard, a reasonable jury could find that upon being transferred to NCCF, Mr. Perry was subject to more restrictive conditions.

Defendants argue that *Holleman v. Zatecky*, 951 F.3d 873 (7th Cir. 2020) forecloses Mr. Perry's claim. Like Mr. Perry, Mr. Holleman was transferred between prisons after he filed grievances. But Mr. Holleman was transferred from a general population unit at Pendleton Correctional Facility to a general population unit at WVCF. *Id.* at 876-77. Thus, he was not transferred to a more restrictive unit. *Id*. Holding that this transfer was not likely to deter First Amendment activity, the Seventh Circuit explained:

> Holleman alleges no increase in restrictions imposed on him at Wabash Valley, other than minor differences in the policies and conditions of the facilities. The changes in circumstance he does allege – less law library time, being made to share a cell, and having to witness more violence – do not transform the transfer into an adverse action because there is no evidence the Defendants knew the transfer would result in these incidental changed conditions.

*Id*. at 881.

Unlike Mr. Holleman, Mr. Perry has presented evidence that the STAND Unit at NCCF was more restrictive than a general population unit. And unlike *Holleman*, where there was no evidence that the defendants knew the transfer would result in changed conditions, the restrictive conditions for inmates in the STAND Unit at NCCF are described in the New Castle Correctional Facility Policy & Procedure Manual. Dkt. 128-1, p. 8-11. At summary judgment, it is reasonable to infer that the defendants who made the decision to transfer Mr. Perry to the STAND Unit at NCCF knew that inmates in that behavior management unit were subject to more restrictive conditions of confinement.

Next, the defendants appear to argue that Mr. Perry was transferred to a less restrictive unit because he was in segregation at WVCF before he was transferred to NCCF. But he was there because of his request for protective custody. His requests for protective custody were denied and he grieved those denials. Instead of moving him to general population—at WVCF or another facility—based on the conclusion that he did not need protective custody, the defendants transferred him to a behavior management unit at a different prison. As the Court explained, this may have resulted in a deprivation of Mr. Perry's rights likely to deter future First Amendment activity.

The defendants also point out that Mr. Perry was not deterred from First Amendment activity because he continued to file grievances and lawsuits while at NCCF. But the fact that Mr. Perry described the unit as "population" and continued to file grievances and lawsuits while there is not dispositive. The standard for determining whether an action is sufficiently adverse to constitute retaliation "is an objective standard; it does not hinge on the personal experience of the plaintiff." *Holleman*, 951 F.3d at 880.

A reasonable jury could conclude that Mr. Perry's transfer to the STAND Unit at NCCF—which involved restrictions on Mr. Perry's freedom that were greater than he would have experienced in general population—was the type of deprivation that would deter a person of ordinary firmness from future First Amendment activity. A reasonable jury could also reach the opposite conclusion. Reaching either conclusion will require making findings of fact and credibility determinations, tasks reserved for a jury. The defendants therefore are not entitled to summary judgment on this prong of Mr. Perry's retaliation claim.

### B. Retaliatory Animus

The parties also dispute causation, that is, whether Mr. Perry's filing of a grievance was the reason for the transfer. To show that the defendants' actions were retaliatory, Mr. Perry must provide evidence that retaliatory animus was at least a "motivating factor" in their actions. *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013). This "can … be demonstrated by suspicious timing alone only when the . . . action follows on the close heels of protected expressions." *Daza v. Indiana*, 941 F.3d 303, 309 (7th Cir. 2019).

But even if Mr. Perry can demonstrate that retaliatory animus was a motivating factor in a defendant's actions, this is not enough to establish retaliation as a matter of law. Instead, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays*, 719 F.3d at 635. In other words, the defendants can rebut Mr. Perry's *prima facie* case of retaliation "by showing that [their] conduct was not a necessary condition of the harm – the harm would have occurred anyway." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). If a defendant can establish a non-retaliatory motive for the allegedly retaliatory action, Mr. Perry must "produce evidence upon which a rational finder of fact could infer that these explanations were

lies." *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006).[6] The motives and responsibilities of each defendant will be discussed below.

### 1. Deputy Warden Littlejohn

When Mr. Perry grieved Deputy Warden Littlejohn's denial of his requests for protective custody, Deputy Warden Littlejohn responded by stating that he was recommending transfer. Deputy Warden Littlejohn argues that there is no evidence that he recommended transfer because of Mr. Perry's grievance. But suspicious timing is enough to raise an inference of a retaliatory motive when there is a chronology of events that suggests retaliation. *Cf. Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir 2009). That is the case here. A reasonable jury could conclude that Deputy Warden Littlejohn "was motivated by the fact that [Perry] engaged in protected activity, and not merely motivated by the substance of his complaint." *Holleman*, 951F.3d at 879.

Since the evidence designated by Mr. Perry is sufficient to raise an inference that Deputy Warden Littlejohn was motivated by retaliatory animus, "[t]he burden then shifts to [Deputy Warden Littlejohn] to show that [he] would have taken the action despite the bad motive." *Mays*, 719 F.3d at 635. Deputy Warden Littlejohn argues that the decision to transfer Mr. Perry was a day-to-day judgment of a prison official, to which the Court should defer. *See Holleman*, 951 F.3d at 880. But even though prison management decisions are entitled to deference, the Court should not "turn a blind eye to claims that prison officials have retaliated against inmates for exercising their right to seek judicial remedy." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

[6] It is worth noting that *Holleman* was decided on the basis of defendants' motion for summary judgment based on qualified immunity. *Holleman,* 951 F.3d at 875. Consequently, Holleman's burden was to "'show that the defendant[s] violated a constitutional right' and that 'the right was clearly established at [that] time.'" *Id.* at 877. Here, the defendants' brief mentions qualified immunity, dkt. 114 at 7, but no argument is developed or presented so it is waived. *See Crespo v Colvin*, 824 F.3d 667, 674 (7th Cir. 2017) (explaining that "perfunctory and undeveloped arguments" are waived) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)).

Deputy Warden Littlejohn argues that he had non-retaliatory reasons for recommending transfer. He explains that "it was obvious Mr. Perry was not going to maintain at WVCF." Dkt. 113-3, p. 2. He also points out that the report of inter-institutional transfer indicated that the reason for recommending transfer was poor adjustment, including "additional observation needed," "overall negative adjustment," "departmental needs," and "failure to adjust." Dkt. 113-8, p. 2. But these are generic reasons chosen from a list on a general form entitled "Report of Inter-Institutional Transfer," and Deputy Warden Littlejohn does not provide any further basis or explanation for them.[7] While reasons selected from a form document may be sufficient to support a transfer to the general population of another facility as "day-to-day prison management" decisions that should not be second-guessed by a judge, *Holleman,* 951 F.3d at 880, they are not sufficient here to explain why transferring Mr. Perry to a behavior management facility with more restrictive conditions was appropriate.

As Mr. Perry points out, in the five months he had been at WVCF, he had only one minor conduct report. Dkt. 128-1, p. 29. Mr. Perry therefore has designated evidence from which a reasonable jury could find that Deputy Warden Littlejohn's reasons for transferring him to the STAND Unit did not meet the requirements of the unit and were not supported by Mr. Perry's behavior. *See McKinley v. Schoenbeck*, 731 Fed. Appx. 511, 515 (7th Cir. 2018) (plaintiff presented evidence to show that the defendants' rationale for placing him in segregation was a pretext where he had not been found guilty of a disciplinary infraction in several years). Deputy Warden Littlejohn may have had good reasons for recommending that Mr. Perry be transferred to

---

[7] Mr. Littlejohn also argues that Mr. Perry would have been transferred out of WVCF even if he had not filed his grievance because WVCF does not have a protective custody unit. But, as explained above, Mr. Perry was transferred to conditions that are more restrictive than general population. Thus, Mr. Littlejohn would have to show that Mr. Perry would have been transferred to that type of unit if not for his grievance and he has not done so.

the STAND Unit such that, if presented at trial and found credible, a jury could find in his favor. But such reasons are not apparent from the designated record before the Court, so his motion for summary judgment must be denied.

### 2. Warden Brown

After Deputy Warden Littlejohn denied his informal grievance and recommended transfer, Mr. Perry filed a formal grievance, which Warden Brown denied. Mr. Perry also filed a grievance appeal, which Warden Brown's designee also denied. Warden Brown argues that Mr. Perry cannot show that he acted with retaliatory animus because there is no evidence that he personally participated in the alleged deprivation of Mr. Perry's rights.

In a claim brought pursuant to 42 U.S.C. § 1983, like Mr. Perry's retaliation claim, "[a] defendant can only be liable for the actions or omissions in which he personally participated." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). A supervisory official like Warden Brown,

> satisfies the personal responsibility requirement of section 1983 ... if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery.

*Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995) (internal quotation marks and citations omitted).

After Deputy Warden Littlejohn denied Mr. Perry's informal grievance regarding the denial of protective custody and recommended that Mr. Perry be transferred, Mr. Perry filed a formal grievance on December 17, 2017. Warden Brown responded to the grievance stating that Deputy Warden Littlejohn's actions were appropriate and noting that Deputy Warden Littlejohn had recommended transfer. Dkt. 120, p. 8. In addition, Warden Brown signed the report of institutional

12

transfer. *Id.*, p. 14. Thus, there is evidence that Warden Brown participated in the allegedly retaliatory action – Mr. Perry's transfer to the Stand Unit at NCCF.

Warden Brown also argues that because Mr. Perry did not contend in his grievance and appeal that Deputy Warden Littlejohn was retaliating against him by recommending transfer, there is no evidence that Warden Brown knew that Deputy Warden Littlejohn had retaliated against Mr. Perry. But Mr. Perry's claim is that Warden Brown retaliated against him, not simply that Deputy Warden Littlejohn retaliated and Warden Brown condoned that retaliation.

Warden Brown thus goes on to argue that there is no evidence that Mr. Perry's First Amendment activities motivated his denial of Mr. Perry's grievance. But it is undisputed that Warden Brown knew that Mr. Perry had filed a grievance regarding Deputy Warden Littlejohn's denials of his requests for protective custody and that in denying Mr. Perry's request, Deputy Warden Littlejohn recommended Mr. Perry's transfer. It is also undisputed that Warden Brown approved these actions through his response to Mr. Perry's grievance and by signing the institutional transfer form. Based on the timing of these events and because a reasonable jury might conclude that Deputy Warden Littlejohn recommended transfer directly in response to Mr. Perry's grievance and Warden Brown approved this decision, Mr. Perry has presented evidence that might lead a reasonable jury to conclude that retaliatory animus was at least a motivating factor in deciding to transfer him.

Like Deputy Warden Littlejohn, Warden Brown argues that Mr. Perry's transfer was appropriate based on his request for protective custody and inability to "maintain" at WVCF, but as already discussed, Mr. Perry has presented evidence from which a reasonable jury might conclude that these reasons were pretext. There are therefore issues of fact regarding Warden

13

Brown's motivations when he denied Mr. Perry's grievance and approved his transfer to NCCF. Warden Brown therefore is not entitled to summary judgment on Mr. Perry's claims.

### 3. Teresa Littlejohn

When Mr. Perry filed a formal grievance regarding Deputy Warden Littlejohn's denial of protective custody, Ms. Littlejohn responded to it by obtaining a statement from Warden Brown that the denial was appropriate. She thus argues that she was not personally responsible for the decision to transfer Mr. Perry. It is undisputed that Deputy Warden Littlejohn recommended Mr. Perry's transfer and Warden Brown signed the report of inter-institutional transfer. There is no evidence that Ms. Littlejohn had any involvement in these decisions or any authority to change them. Without personal involvement, Ms. Littlejohn cannot be held liable. *See Gentry*, 65 F.3d at 561. She is therefore entitled to summary judgment.

### 4. Linda VanNatta

Ms. VanNatta was an administrative assistant who worked at the IDOC Central Office reviewing grievance appeals. She reviewed Mr. Perry's grievance appeal in which he referenced Deputy Warden Littlejohn's denial of his requests for protective custody. Her appeal response stated: "Agree with facility Level 1 Response. Note you have since been transferred from Wabash Valley Correctional Facility to New Castle Correctional facility." Dkt. 113-7, p. 1. Ms. VanNatta thus responded directly to Mr. Perry's grievance appeal regarding the denial of protective custody, not any challenge to the transfer. There is no evidence that Ms. VanNatta was aware that Mr. Perry was transferred to the STAND Unit or that she had any authority in the transfer decision. Thus, like Ms. Littlejohn, because she had no responsibility for the transfer, she is entitled to summary judgment.

### 5. Sonya Phipps

Mr. Perry appealed the classification decision to transfer him to the STAND Unit. Dkt. 120, p. 11. Ms. Phipps denied the appeal, stating that Mr. Perry's placement within NCCF must be addressed to the Warden. Dkt. 113-9, p. 1. Mr. Perry filed a second appeal to Ms. Phipps on January 25, 2018 and received the same answer. *Id.* p. 2.

Ms. Phipps argues that she had no personal responsibility for the alleged retaliatory conduct, the transfer to the STAND Unit at NCCF. She has shown that because Mr. Perry's internal placement is a facility issue, and not one that she can review, that she had no responsibility for the placement decision. She is therefore entitled to summary judgment on Mr. Perry's claims.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment, dkt. [113], is **GRANTED in part and DENIED in part**. The motion is **granted** as to Mr. Perry's claims against defendants Teresa Littlejohn, Linda VanNatta, and Sonya Phipps. Because there are issues of fact regarding whether Mr. Perry's transfer resulted in a deprivation that would deter a person of ordinary firmness from participating in First Amendment activity and whether defendants Frank Littlejohn and Richard Brown acted with retaliatory animus, the motion is **denied** as to Mr. Perry's claims against these defendants. Consistent with this ruling, Mr. Perry's motion to enforce summary judgment, in which he asks the Court to enter summary judgment in his favor, dkt. [135], is **denied**.

Mr. Perry's motion to respond to defendants' notice of additional authority, dkt. [128], and motion to supplement summary judgment reply, dkt. [132], are **GRANTED** to the extent that the arguments and evidence presented in those motions have been considered. The defendants' motion to strike Mr. Perry's notice of additional authority, dkt. [143], is **GRANTED** because Mr. Perry

referenced in that notice *Cook v. Hoppin*, 783 F.2d 684 (7th Cir. 1986), a case decided well before the summary judgment briefing in this case.

The Court *sua sponte* reconsiders Mr. Perry's motion for assistance with recruiting counsel. That motion, dkt. [52], is now **GRANTED** to the extent that the Court will attempt to recruit counsel to represent Mr. Perry for settlement and trial purposes if one is necessary.

**SO ORDERED.**

Date: 10/7/2020

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JASON SETH PERRY
138925
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All Electronically Registered Counsel