UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JASON SETH PERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-02437-JPH-MJD |
| | ) |
| FRANK LITTLEJOHN, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON SANCTIONS HEARING**

On March 9 and June 1, 2022, the Court held an evidentiary hearing to determine whether Defendants' late disclosure of exhibits 73 and 74 warranted the imposition of sanctions against Defendants and/or their counsel. Dkt. 302 at 3. While the Court concludes that sanctions are not warranted, this situation—that has taken substantial resources to resolve—should never have happened in the first place. Perhaps most obviously, this situation could have been avoided if IDOC had searched its IRIS database early in the litigation. IRIS is maintained by IDOC for the purpose of storing electronic copies of important inmate documents that are otherwise only available in hardcopy format at the IDOC facility where an inmate is housed. For reasons unknown, this substantial repository of electronic copies of inmate records was not searched in this case until IDOC was preparing for a settlement conference. Nor is IRIS searched as part of IDOC's standard process of searching for relevant records in prisoner lawsuits.

In an effort to avoid similar occurrences in the future, the Court circulates a copy of this order to all Magistrate Judges in the Southern District of Indiana to ensure that they are aware of the IRIS database as a resource that IDOC has available to efficiently search for responsive records in prisoner lawsuits.

## I. BACKGROUND

On August 8, 2018, Mr. Perry filed a complaint alleging that Defendants had unlawfully transferred him to a more restrictive prison unit in retaliation for filing grievances. After granting in part and denying in part Defendants' motion for summary judgment, dkt. 145, the Court recruited counsel to represent Mr. Perry, dkt. 154.

On or about March 3, 2021—more than a year after the close of discovery—Defendants produced exhibits 73 and 74 to recruited counsel.

Trial Exhibit 73 is a memo addressed to Michael Osburn, IDOC Southern Regional Director, from Defendant Richard Brown, Superintendent. Dkt. 180-1, at 1. The memo is entitled, "**SUBJECT:** Offender Jason Perry DOC#138925 Recommendation for Transfer to NCN-TU" and says in relevant part, "Based on the recommendation of the Unit Management Team and his refusal to accept an assignment in general population, I recommend transfer to NCN-TU." *Id.*

Trial Exhibit 74 is an email from Defendant Littlejohn to a corrections officer at WVCF entitled, "**Subject:** Perry, Jason 138925 (D-607) Restrictive Status Housing Report, in which Mr. Littlejohn replies, "Im [sic] about sick of Perry. Maybe NCN-TU? Its obvious he will not maintain in our GP but there is

2

never enough for PC." Dkt. 180-1, at 4. NCN-TU refers to the more restrictive facility to which Mr. Perry was transferred.

Exhibits 73 and 74 are directly related to the event that lies at the heart of this case, that is, Mr. Perry's transfer from Wabash Valley to a more restrictive prison and the reasons for the transfer. Those documents were clearly within the scope of Rule 26(a)(1)'s required initial disclosure provision.

At Mr. Perry's request, recruited counsel were permitted to withdraw from the case. Dkt. 169; 170; 171; 174. Mr. Perry filed a motion for sanctions under Federal Rule of Civil Procedure 37 against the Defendants based on the late disclosure of exhibits 73 and 74. Dkt. 172. The Court declined to exclude exhibits 73 and 74 at trial as a sanction for late disclosure, dkt. 274, and the case proceeded to trial.

Exhibits 73 and 74 played a central role at trial. So central that they were the foundation upon which Defendants built their defense, as evidenced by their closing argument. Dkt. 300, at 110-117. Nevertheless, the jury returned a verdict in Mr. Perry's favor. Dkt. 279.

Although Mr. Perry's underlying claim has been resolved, the Court has an independent interest in getting to the bottom of what happened here; that is, why such obviously relevant documents were not produced for so long.

## II. APPLICABLE LAW

While the late disclosure of Exhibits 73 and 74 was brought to the Court's attention through Mr. Perry's Rule 37 motion, dkt. 172, the Court held the evidentiary hearing independent of Mr. Perry's motion for sanctions. Dkt. 302.

3

The "district court has the inherent power to sanction a party who has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015); *Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009) (The use of Court's inherent power to sanction "is permissibility exercised not merely to remedy prejudice to a party, but also to reprimand the offender and deter future parties from trampling upon the integrity of the court.").

### III.   FINDINGS

The following witnesses testified at the hearing: Mike Ellis, Richard Brown, Frank Littlejohn, and Robert Bugher. Dkt. 333. Counsel presented evidence regarding the steps taken by Defendants and counsel to search for relevant information in response to Mr. Perry's lawsuit; the cause of the delayed disclosures; and remedial measures that have been taken.

#### A. *Littler* Sanctions Order

In January 2020, the Honorable Jane Magnus-Stinson issued a sanctions order in a prisoner lawsuit, *Littler v. Martinez et al.*, where the Attorney General's Office represented IDOC employee defendants and the Court found, among other issues, that the defendants had failed to timely turn over highly relevant video evidence.  No. 2:16-cv-472-JMS-DLP, dkt. 345. Considering that such a fundamental disclosure blunder occurred in this case so closely after Judge Magnus-Stinson imposed sanctions in *Littler*, the Court ordered defense counsel to address at the hearing whether Defendants, the

4

IDOC, and Deputy Attorney Generals were made aware of the *Littler* sanctions order. Dkt. 320.

Evidence presented at the hearing established that the *Littler* sanctions order was timely distributed to Defendants; to IDOC legal personnel; to IDOC facilities; and within the Attorney General's Office. Counsel described steps that the Attorney General's office has taken to improve processes for searching for documents in response to a lawsuit, including training and case review meetings.

Accordingly, the Court concludes that the *Littler* sanctions order was appropriately disseminated with the IDOC and the AG's Office.

## B. Late Disclosure of Exhibits 73 and 74

### 1. Mike Ellis

Mike Ellis was the litigation liaison at WVCF. He received little formal training when he was promoted from casework manager to litigation liaison.

Counsel from the Attorney General's Office contacted Mr. Ellis for assistance searching for, identifying, and gathering responsive documents for Mr. Perry's lawsuit. Mr. Ellis forwarded the email with the search parameters that he received from the AG's Office to Mr. Brown and Mr. Littlejohn, with a request that they each search their files for responsive documents. Mr. Ellis also conducted his own search for responsive documents, including contacting grievance specialists, contacting the office of investigations and intelligence, and looking in certain files and document repositories. Mr. Ellis did not, however, search every location where relevant documents may have been

5

located, including Mr. Perry's "offender packet" where a hardcopy of Exhibit 73 was located.

Mr. Ellis explained that he read counsel's request as seeking only specific documents and he therefore searched only the locations where those specific documents would be found. He did not understand the request to include classification memos, like Exhibit 73. The Court finds Mr. Ellis' testimony credible.

### 2. Richard Brown

Richard Brown, who was the Warden of WVCF at the time of Mr. Perry's lawsuit, testified that he received Mr. Ellis's request to search for responsive documents. In response, he searched his computer and asked his secretary to search for correspondence that was stored in hard copy format. Exhibit 73 was not found on Mr. Brown's computer because it had been created by another IDOC official, Heather Blasingame. Therefore, the electronic version of Exhibit 73 was located on Ms. Blasingame's computer, which Mr. Brown did not have access to and was not searched in connection with Mr. Perry's lawsuit.

The Court finds that Mr. Brown was reasonably diligent in searching for documents relevant to Mr. Perry's lawsuit.

### 3. Frank Littlejohn

Frank Littlejohn, who was Deputy Warden of Operations at WVCF during the lawsuit, testified that he follows the same process in response to any request from the litigation liaison. In this case, he recalled searching his emails, identifying Exhibit 74—the email he sent regarding Mr. Perry's restrictive housing status report—and forwarding it to Mr. Ellis. Mr. Ellis, however, did not have a record of Mr. Littlejohn having forwarded the email to him.

The evidence at the hearing did not establish why Mr. Ellis did not receive the email that Mr. Littlejohn testified having sent. But there is not a sufficient evidentiary basis to support a finding that Mr. Littlejohn did not send the email to Mr. Ellis as he testified. Weighing all the evidence, the Court finds that Mr. Littlejohn's testimony plausible and concludes that sanctions against him are therefore not warranted.

### 4. Bob Bugher

Bob Bugher, Senior Counsel to IDOC, testified that he discovered Trial Exhibits 73 and 74 while he was preparing for a settlement conference in this case, which was set for April 15, 2021, more than three years after Mr. Perry's complaint was served on the defendants. He found the documents when he searched Mr. Perry's name in the IRIS database.[1] IRIS is a central repository of documents relating to classification, sentencing, and disciplinary charges. After

---

[1] Mr. Bugher explained that IRIS is an acronym, which he understood to stand for Inmate Record Information System.

7

finding Exhibits 73 and 74, Mr. Bugher scanned and emailed them to counsel at the Attorney General's office. Counsel informed Mr. Bugher that those documents needed to immediately be disclosed to Mr. Perry, and they were.

### C. Conclusions

The Court concludes that the delayed production of Exhibits 73 and 74 was the result of insufficient communication between among IDOC officials and the AG's Office, and the use of unreliable methods to search for relevant documents. Exhibit 73 was not identified because it was created and stored by a non-party whose files were not searched. Exhibit 74 was timely identified by Mr. Littlejohn but was not successfully forwarded.

Broadly speaking and relevant to future cases, these omissions would likely not have occurred if the request for documents from the AG's Office had been broader; if Mr. Ellis had searched all potential repositories where offender files and data are stored; or if the easiest step of all had been taken, that is, a search of IRIS during the initial disclosure phase of the case for documents relating to Mr. Perry.

### D. Remedial actions

#### 1. AG's Office/IDOC

Counsel for the defendants stated at the hearing that since the sanctions order in *Littler* and the delayed disclosure in this case, they have conducted trainings, and other activities such as roundtables and case meetings to improve their processes related to identifying responsive documents in litigation. In addition, requests from counsel to IDOC litigation liaisons are

8

now broader to include all documents for an offender during a specified time period, rather than limited to specific categories of documents. Further, the AG's Office provides the IDOC litigation liaisons with a detailed checklist that includes a broad catchall provision. Counsel explained that these broader requests encourage the litigation liaison and the defendants to perform more general, inclusive searches with the goal of uncovering all potentially relevant documents related to the offender involved in the litigation.

Mr. Ellis explained that he now maintains a checklist of places to look for responsive documents.

### 2. IRIS Database

IRIS contains digital copies of a wide range of hardcopy documents related to offenders that are stored onsite at the IDOC facility where an offender is housed. Mr. Bugher explained that, before IRIS, to obtain documents related to an offender he would have to contact the litigation liaison at the facility where the offender was located who would then have to look in the physical files associated with the offender, pull out and copy relevant documents, and send them to Mr. Bugher.

The Attorney General's Office does not have access to IRIS and access among IDOC employees is restricted to certain pre-approved officials.

As far as Mr. Bugher knows, IRIS is not searched as part of the process of finding documents that are responsive and relevant in a lawsuit.

## IV. CONCLUSION

The Court concludes that the late production of Exhibits 73 and 74 in this case was not due to intentional abuse of the judicial process by either the Attorney General's Office or the individual defendants. Since the sanction order in *Littler* and the delayed disclosure of documents in this case, the Attorney General's Office and the IDOC have taken remedial steps aimed at preventing such failures in the future and ensuring that all relevant documents are provided in discovery. Nonetheless, this situation was easily preventable with a simple search of IRIS.  A copy of this Order shall be distributed to each Magistrate Judge of the Southern District of Indiana so that they may consider ordering a search of IRIS in individual cases or as a routine part of the case management discovery plan in prisoner lawsuits.

The Court finds that no sanctions are warranted. Mr. Perry's motion to rule on sanctions, dkt. [356], is **granted to the extent** that the Court has now fully resolved his previous motion for sanctions, dkt. [172].  The motion to rule on sanctions is otherwise **denied**.

The Clerk is **directed** to distribute a copy of this Order to each Magistrate Judge of the Southern District of Indiana.

**SO ORDERED.**

Date: 5/5/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JASON SETH PERRY
138925
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
PENDLETON, IN 46064

All Electronically Registered Counsel

Magistrate Judge Tim A. Baker

Magistrate Judge Kellie M. Barr

Magistrate Judge Mark J. Dinsmore

Magistrate Judge Mario Garcia

Magistrate Judge M. Kendra Klump

Magistrate Judge Craig M. McKee

Magistrate Judge Van T. Willis